UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-552-F

| | |
|---|---|
| ISCO INDUSTRIES, LLC, a Kentucky limited liability company, </br></br> Plaintiff, </br></br> v. </br></br> CARL D. ERDLE, an adult individual, </br></br> Defendant. | **ORDER** |

This matter is before the court upon the Motion to Dismiss [DE-24] filed by Defendant Carl D. Erdle ("Erdle") against Plaintiff ISCO Industries, LLC ("ISCO"). ISCO has filed a Response in Opposition [DE-36]. Erdle has filed a Reply [DE-37]. This matter is now ripe for adjudication.

## I. STATEMENT OF THE CASE

This action arises out of a complaint filed on October 11, 2011, by ISCO claiming that Erdle breached the terms and conditions as set forth in the Non-Disclosure and Non-Competition, Non-Solicitation Agreements ("Non-Compete Agreements") consummated on August 25, 2003. Summons was issued as to Erdle on October 13, 2011, and on October 25, 2011, ISCO submitted Proof of Service indicating that Erdle had been properly served with process. *See* [DE-15].

On October 18, 2011, ISCO filed its first Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction [DE-9]. The court, on October 24, 2011, issued an Order [DE-14] denying ISCO's request for temporary injunctive relief for failure to abide by the requirements under Rule 65(b) of the Federal Rules of Civil Procedure, namely, that the moving counsel certifies in writing any efforts made to give notice and the reasons why it should not be

required.

On October 25, 2011, ISCO filed its second Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction [DE-16], this time attaching the affidavit of Andrew L. Fitzgerald, co-counsel for ISCO. The affidavit provides that Erdle was served with a copy of the Complaint and Summons on October 19, 2011. *See* [DE-16], Ex. 12. The affidavit further certifies that a copy of the Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction was sent to Erdle via Priority Mail on the same date and that it had not been returned to ISCO as undeliverable. *See* [DE-16], Ex. 12. Upon careful consideration, the court allowed in part ISCO's second Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction and scheduled a preliminary injunction hearing on Friday, November 4, 2011.

A day before this hearing, on November 3, 2011, Erdle filed his Motion to Dismiss [DE-24] and Motion for Expedited Discovery [DE-26]. At the November 4, 2011, preliminary injunction hearing, due to the late filing of these motions, and to afford both parties an opportunity to reach a settlement, the court continued this hearing to December 19, 2011. With the consent of both parties, the temporary restraining order already issued was extended to this date.

## II. STATEMENT OF THE FACTS

ISCO is a customized piping solutions provider based in Louisville, Kentucy that stocks and sells a variety of piping materials from more than 25 facilities spanning the United States, Canada, and Australia. [DE-1], Compl. ¶ 5. Because the piping distribution business is highly competitive, ISCO claims that it makes significant investments of time and money into training its salespersons to become knowledgeable about its business, products, capabilities, and sales strategies to enable them to effectively and efficiently market and sells its products and services. [DE-1], Compl. ¶ 8.

ISCO further states that it requires all of its employees to sign Non-Disclosure Agreements prohibiting the dissemination of detailed confidential information relating to ISCO's rental rates, fabrication capabilities, supply chain management, pricing information, customer lists, and general business strategy. [DE-1], Compl. ¶¶ 10, 12. ISCO contends that Erdle signed a Non-Disclosure Agreement when he began working for ISCO as a salesperson on August 25, 2003. [DE-1], Compl. ¶¶ 15, 16.

The controversy in this case centers around the optional Non-Compete Agreement allegedly entered into by Erdle on August 25, 2003. [DE-1], Compl. ¶ 19. The Non-Compete Agreement contains several restrictions in the event that Erdle separated from his employment with ISCO. [DE-1], Compl. ¶ 20. In particular, Sections 3 and 4 of the Non-Compete Agreement prohibit Erdle from divulging any non-public information, knowledge or data relating to ISCO's business that Erdle obtained while he was employed by ISCO, in addition to any of ISCO's financial information. [DE-1], Compl. ¶ 20. Section 5 of the Non-Compete Agreement requires Erdle to return all memoranda, notes, records, code books, papers, and other documents and all copies thereof relating to ISCO's business or the business of its subsidiaries or affiliates upon the termination of Erdle's employment with ISCO. [DE-1], Compl. ¶ 21.

Furthermore, Section 6 of the Non-Compete Agreement contains non-solicitation restrictive covenants that provide, *inter alia*, that:

> For a period of thirty-six (36) full consecutive months after separation from employment, Employee shall not...divert, contact, solicit, do business with, or attempt to do any of the foregoing with any existing or prospective customer of the Company or with any person who has been a customer of the Company at any time within two years before Employee's Separation from employment... [or] direct or otherwise target any selling, marketing or promotional efforts of any person at any existing or prospective customer of the Company.

3

[DE-1], Compl. ¶ 22. The Non-Compete Agreement also includes non-competition restrictions, which provide, *inter alia*, that:

> For a period of thirty-six (36) full consecutive months after separation from employment, Employee shall not...engage in any business, acquire any interest in any business or profession, or serve as an agent, lender, member, officer, partner, director, employee, investor, proprietor, consultant, stockholder, representative, or independent contractor of any business, that competes with the business of [ISCO] or any affiliate (and their respective assignees and successors in interest) within thirty (30) miles of any location where [ISCO] does business and the Employee provided services for [ISCO].

[DE-1], Compl. ¶ 23. ISCO contends that these restrictive covenants were "in consideration for, and a necessary condition of employment." [DE-1], Compl. ¶ 24. Furthermore, ISCO states that these restrictive covenants were "reasonably necessary to protect legitimate business interests of ISCO, including trade secrets, other valuable confidential or business information, substantial relationships with existing or prospective vendors, suppliers, customers, contractors, consultants, and independent contractors with whom ISCO has or seeks a business relationship[.]" [DE-1], Compl. ¶ 24.

ISCO claims that after Erdle signed the Non-Compete Agreement, it invested "significant amounts of time, effort [,] and money training Erdle to become an effective salesman for ISCO's products and services." [DE-1], Compl. ¶ 27. During his employment, ISCO further contends that Erdle worked as a salesman out of his home office in Wake Forest, North Carolina, and was the Regional Sales Manger for the North Carolina and South Carolina territories. [DE-1], Compl. ¶ 28. Through the training and confidential resources provided, Erdle is alleged to have generated significant revenue for ISCO. [DE-1], Compl. ¶ 30. ISCO claims that Erdle was compensated by a commission plan which ISCO modified periodically. [DE-1], Compl. ¶ 29. In addition, ISCO claims that from the 4th Quarter of 2003 through the 2nd Quarter of 2011, Erdle received and

4

retained $30,025.05 of additional bonuses as a byproduct of his agreement to be bound by the Non-Compete Agreement. [DE-1], Compl. ¶ 31.

On September 27, 2011, Erdle resigned from his position at ISCO to work for HD Supply, Inc. ("HD Supply"), who is one of ISCO's primary competitors. [DE-1], Compl. ¶¶ 32-34. In this position, ISCO contends that Erdle will be able to contact ISCO's customers in these territories to whom he sold while at ISCO, solicit their business, and capitalize on the goodwill which ISCO had earned with these customers. [DE-1], Compl. ¶ 37. More specifically, ISCO claims that Erdle will be able to use his knowledge of ISCO's rental rates, fabrication capabilities, supply chain management, pricing information, and other general business strategies to give HD Supply unfair competitive advantages against ISCO, which will lead to lost sales and loss of business opportunities. [DE-1], Compl. ¶ 38. In light of the volume of sales and profits for which Erdle generated during his employment, ISCO believes that the potential damages that it will suffer should Erdle violate the Non-Compete Agreement for the next three years would far exceed the threshold $75,000.00 amount in controversy required for diversity jurisdiction. [DE-1], Compl. ¶¶ 40, 46.

### III. STANDARD OF REVIEW

Federal courts, unlike state courts, are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This court may obtain subject matter jurisdiction based on either federal questions or diversity of citizenship. Federal question jurisdiction exists when the plaintiff alleges a violation of the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction based on diversity of citizenship requires the plaintiff to show that the defendants are citizens of a different state than that of the plaintiff, and that the amount in controversy exceeds

$75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). The plaintiff, ordinarily, must include a "short and plain statement of the grounds for the court's jurisdiction" in the Complaint. FED.R.CIV.P. 8(a)(1).

In a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). The defendant may challenge subject matter jurisdiction two different ways under Rule 12(b)(1). First, the defendant may contend that a complaint fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). In such a challenge, the facts alleged in the complaint are taken to be true by the court. *Id.* A second way in which the defendant may challenge jurisdiction pursuant to Rule 12(b)(1) would be to contend that, though a complaint alleges sufficient facts to invoke subject matter jurisdiction, those facts are not themselves true. *Id*; *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.2009). In such a challenge, the court is "to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999).

When a court considers a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in a complaint will be construed in the nonmoving party's favor and treated as true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). However, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). To survive a motion to dismiss, the factual allegations

6

contained in the complaint "must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The issue in reviewing the sufficiency of the pleadings in a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims made. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Dismissal, however, is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.1996); *See generally*, 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

## IV. DISCUSSION

Erdle moves to dismiss this suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Rule 12(b)(1)

Erdle argues that, under Rule 12(b)(1), this court lacks subject matter jurisdiction because "nothing in [ISCO's] Complaint supports the allegation that the amount in controversy exceeds $75,000.00." [1] [DE-25], Erdle's Memo in Support, p. 2. Erdle further contends that the only statement in the entire Complaint providing a dollar figure of any sort is:

---

[1] There is no dispute that both parties are diverse.

> ISCO therefore has suffered and will suffer the loss of its investment in training Erdle, loss of goodwill, loss of business opportunities, and loss of competitive advantages, all of which are immediate, irreparable in nature and immeasurable in amount, as well as monetary damages that have yet to be quantified, but that exceed $75,000 in amount, plus the attorneys' fees and costs incurred in prosecuting this action.

[DE-25], Erdle's Memo in Support, p. 2.

The court notes, at the outset that, in general, the amount requested in the Complaint determines the amount in controversy. *See Momin v. Maggiemoo's Int'l, L.L.C.*, 205 F.Supp.2d 506, 508-09 (D.Md. 2002)(citation omitted). However, it is well established that in actions seeking declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977). The Fourth Circuit has historically applied the "either-viewpoint" rule in determining the value of the object of the litigation. *Gonzalez v Fairgale Props. Co., N.V.*, 241 F.Supp.2d 512, 517 (D.Md. 2002). Under this rule, the amount in controversy requirement is satisfied if either the gain to the plaintiff or the cost to the defendant is greater than $75,000.00. *Id.*; *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964). More specifically, the jurisdictional amount in controversy requirement is satisfied if either the " 'direct pecuniary value' of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000." *Lee v. Citimortgage, Inc.*, 739 F.Supp.2d 940, 946 (E.D. Va. 2010)(citation omitted). In conducting this analysis, the court may not "weigh the merits of the case, but should consider all the evidence in the record, including the pleadings and the affidavits submitted by the parties." *Id.* Moreover, it is important to pinpoint exactly what relief the plaintiff seeks to determine what evidence may be helpful in assessing its pecuniary value. *Id.*

Here, ISCO is seeking specific damages caused by Erdle's alleged breach of the Non-Compete Agreement and injunctive relief that will mitigate any future irreparable harm that might result from non-compliance of such accord. Although it is true that ISCO has not explicitly declared a concrete amount in damages, it appears to the court that the "direct pecuniary value" of the right the plaintiff seeks to enforce is well in excess of the required $75,000.00 amount in controversy required for diversity jurisdiction. In its Response in Opposition [DE-36], ISCO contends that during the period for which the Non-Compete Agreement would be applicable, Erdle generated tens of millions of dollars in sales and profits for ISCO during his tenure as the Regional Sales Manager for North and South Carolina.[2] Based on the amount of business and revenue that Erdle has been directly involved in for the period of time in which the Non-Compete Agreement would apply, it appears that any breach of restrictive covenants in this agreement would surely produce damages in excess of the required $75,000.00 amount in controversy for diversity jurisdiction.

Furthermore, a facial examination of the Complaint allows the court to make a reasonable inference that the value of injunctive relief sought would be in excess the requisite jurisdictional amount in controversy. In the Complaint, ISCO claims that employees who agree to the Non-Compete Agreement become eligible for an additional bonus program. [DE-1], Compl. ¶ 13. Specifically, ISCO contends that, in general, the additional bonus program, which is modified from time to time, pays a quarterly 1% bonus for each quarter in which sales expenses, accounts receivable and/or profit margins fall within specified targets and there are no safety incidents. [DE-1], Compl.

---

[2] ISCO has provided, in its Motions for Temporary Injunction, Preliminary Injunction, and Permanent Injunction, exhibits comprising of Erdle's earned commission which confirms that he has been involved in millions of dollars in sales and profits for ISCO. *See* [DE-9; DE-16], Ex. A-1-2.

9

¶ 14. Moreover, ISCO claims that from the 4th Quarter of 2003 through the 2nd Quarter of 2011, Erdle received and retained $30,025.05 of additional bonuses through his participation in the additional bonus program. [DE-1], Compl., ¶ 31. Without making any exact calculation, if the 1% bonus for Erdle equals a sum of $30,025,05 in additional commissions, the court can make a reasonable inference that Erdle has been involved in millions of dollars of sales and profits for ISCO in which the Non-Compete Agreement seeks to protect. Accordingly, as it appears that the requisite jurisdictional amount in controversy has been met, Erdle's Motion to Dismiss pursuant to Rule 12(b)(1) is DENIED.

### B. Rule 12(b)(6)

Erdle has also moved to dismiss ISCO's Complaint under Rule 12(b)(6) claiming that it fails to state a claim upon which relief may be granted. In support of this contention, Erdle appears to advance two main arguments. First, Erdle claims that Non-Compete Agreement was never signed and therefore fails to satisfy the statute of frauds. Second, Erdle claims that Non-Compete Agreement is facially void for public policy under North Carolina law. These arguments will be addressed in turn.

#### 1. Alleged Failure to Satisfy the Statute of Frauds

Erdle first argues that ISCO's Complaint should be dismissed pursuant to Rule 12(b)(6) because, contrary to the allegations of the Complaint, he neither "executed" nor "signed" the Non-Compete Agreement which is the basis of this suit. Therefore, Erdle contends that Non-Compete Agreement does not comply with the statute of frauds and is invalid on its face.

It is well established that affirmative defenses, such as the statute of frauds, may be raised in a Rule 12(b)(6) motion to dismiss, but for dismissal to be allowed on the basis of an affirmative

defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings. *Harrington v. M.C. Fuhrman & Associates, LLC*, No. WDQ-10-1258, 2011 WL 90234, at *1 (D. Md. Jan. 10, 2011) (citing *Blackstone Realty, LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001). Moreover, in both Kentucky and North Carolina, it appears that equitable estoppel may override the statute of frauds so as to enforce an otherwise unenforceable agreement. *Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C.*, 124 N.C.App. 383, 387, 477 S.E.2d 262, 264 (1996), *disc. rev. denied*, 345 N.C. 340, 483 S.E.2d 163 (1997); *see Farmers Bank and Trust Co. of Georgetown Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 10 (Ky. 2005)(stating that estoppel is a doctrine of equity, and equitable relief may be granted to relieve the harsh effects of the statute of frauds).

Here, ISCO's complaint alleges both the existence of a valid Non-Compete Agreement and that Erdle received additional bonus commissions as a result of agreeing to such a covenant. Viewing these allegations in the light most favorable to ISCO, the Complaint state a claim for breach of contract and specific performance on which relief could be granted. Accordingly, Erdle's request that this case be dismissed on the grounds that Non-Compete Agreement does not comply with the statute of frauds is DENIED.

### 2. Void and Unenforceable as a Matter of North Carolina Public Policy

Erdle also moves for dismissal under Rule 12(b)(6) arguing that even if there was a signed and executed Non-Compete Agreement, it is void and unenforceable as a matter of North Carolina public policy. Erdle contends that the Non-Compete Agreement violates the fundamental public policy of North Carolina, and therefore this court should not apply Kentucky law as stipulated to in the contract. *See Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d 623, 625 (2000)(stating that the parties' choice of law is generally binding on the interpreting court as long as they had a

11

reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law).

Assuming, *arguendo*, that it would be inappropriate for this court to apply the laws of Kentucky as stated in the Non-Compete Agreement, the courts in North Carolina "make clear that evaluating the reasonableness of a non-compete provision is a fact-specific inquiry that requires a court to examine the scope of the activities prohibited, the territories restricted, and the time length of the restrictions. *Kotane, Inc. v. Banish*, No. 5:10-CV-90, 2011 WL 3804181, at *5 (W.D.N.C. August 29, 2011). At this point in the suit, there remains issues that are relevant to the inquiry of whether ISCO's Non-Compete Agreement is indeed violative of the fundamental public policy of North Carolina that remain outstanding. Therefore, the court finds that now is not the appropriate time to dismiss this claim on such a basis. Therefore, Erdle's Motion to Dismiss on this ground is DENIED.

## V. CONCLUSION

Based on the aforementioned rationale, Erdle's Motion to Dismiss [DE-24] is **DENIED**. The preliminary injunction hearing remains scheduled for December 19, 2011, at 10:00 a.m., in Wilmington, North Carolina.

SO ORDERED.

This the 15th day of December, 2011.

JAMES C. FOX
Senior United States District Judge

12

Case 5:11-cv-00552-F   Document 38   Filed 12/15/11   Page 12 of 12